Upon review of the competent evidence of record with reference to the errors assigned, and finding no good grounds to receive further evidence or to rehear the parties or their representatives, the Full Commission affirms with minor modifications the Opinion and Award of the Deputy Commissioner.
***********
The Full Commission finds as fact and concludes as matters of law the following which were entered into by the parties in a Pre-Trial Agreement and at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. The parties are subject to and bound by the provisions of the North Carolina Workers Compensation Act.
2. On 21 August 1990, the relationship of employer-employee existed.
3. Plaintiff sustained a compensable injury to her right upper extremity on 21 August 1990.
4. Plaintiffs average weekly wage is $428.34 yielding a compensation rate of $285.57.
5. At the time of the Pre-Trial Agreement, dated 15 October 1997, plaintiff continued to be employed by US Airways at their facility in Charleston, South Carolina. Plaintiff was out of work from 21 August 1990 through 8 September 1990; 16 September 1990 through 13 October 1990; 1 July 1991 through 7 October 1991; and 7 October 1993 through 31 August 1993. Plaintiff returned to work on 1 September 1993.
6. Plaintiff has been rated as sustaining a 25% permanent partial disability to her right upper extremity by Dr. T. Kern Carlton of the Rehab Center in Charlotte, in his independent medical examination of her on 18 August 1997. Plaintiff has been rated as sustaining a 25% permanent partial disability to her right upper extremity by Dr. Thomas A. Duc of the Medical College of South Carolina on 17 September 1997. Plaintiff received a 25% permanent partial disability rating to the right by Dr. James E. Warmoth on 15 August 1997.
7. Plaintiff was also evaluated by Dr. Warren B. Burrows of the Carolina Hand Center on 14 June 1993, and was given a 10% permanent partial disability rating to the right arm. Plaintiff was also evaluated by Dr. Stephen Naso.
8. In the Pre-Trial Agreement plaintiff contended that she was due compensation for 21 days in November 1993; 35 weeks from 1 May 1994 through 31 December 1994; 52 weeks during calendar year 1995; 19 weeks from 1 January 1996 through and including 12 May 1996 and from and after her return to work on 13 May 1996. After the hearing, however, the parties stipulated that defendants owe plaintiff compensation for 21 days in November 1993; for the 35 week period from 1 May 1994 through 31 December 1994; for the 52 week period during calendar year 1995; for the 19 week period from 1 January 1996 through and including 12 May 1996 and/or part of June and July 1996 in the amounts of $266.20 and $352.36 respectively.
9. The parties also agreed to stipulate after the hearing that from 13 May 1996 up to and including 23 October 1997, plaintiff would have earned wages in excess of her compensation rate and would not be entitled to compensation for that period.
 ***********
Based upon all the competent evidence adduced at the hearing, the Full Commission makes the following additional:
 FINDINGS OF FACT
1. Plaintiff was born on 30 September 1965 and is right-hand dominant. She became employed with defendant-employer US Airways as a flight attendant on 6 May 1987.
2. On 21 August 1990, plaintiff sustained an admittedly compensable injury by accident arising out of and in the course of her employment with defendant-employer when she injured her right wrist while moving a beverage cart. Plaintiff received temporary total disability compensation until she was released to return to work on 1 September 1993. At that time, plaintiff returned to her regular job working a reduced schedule of 15 hours per week.
3. On 25 October 1993, plaintiff re-injured her right arm in a work-related incident. A claim for this injury was filed in the State of Virginia and plaintiff received nine days of compensation for that injury.
4. Plaintiff was out of work 21 days in November 1993, 35 weeks from 1 May 1994 through 31 December 1994, 52 weeks during calendar year 1995, 19 weeks from 1 January 1996 through and including 12 May 1996 and certain periods of time during June and July 1996. Defendants have agreed that they owe plaintiff compensation for these periods, and they are not in issue.
5. Plaintiff attempted to return to work from 1 December 1993 through 30 April 1994 as an airline attendant but was unable to maintain this job. On 13 May 1996, plaintiff returned to work with defendant-employer in an administrative position. The job required that plaintiff update and maintain employee attendance files, verify time cards, process station billing, distribute company mail and postings, gather and process monthly reports, type employees evaluations, update and maintain training records, take phone messages for her supervisor and send faxes.
6. In the course of performing her administrative duties from 13 May 1996 through 23 October 1997, plaintiff experienced pain "like a toothache, her right arm turned red and blotchy and beaded with sweat. She experienced shoulder pain and when attempting fine motor skills, felt as if her hand was on fire. Plaintiff experienced difficulty writing, copying, filing, separating papers, lifting files, punching holes, etc.
7. Due to plaintiffs physical limitations, she was unable to perform the administrative job at an acceptable level and received several reprimands and disciplinary actions, both verbal and written. If plaintiff receives three levels of reprimands, then she will be terminated. Plaintiff had no prior disciplinary problems or reprimands before her compensable injury.
8. On any given day, plaintiff could perform her various duties for approximately an hour or an hour and 45 minutes and would experience pain, bright red discoloration of her hand, and sweat beading on her skin.
9. Subsequent to her 21 August 1990 compensable injury, plaintiff saw numerous physicians. Dr. Thomas Duc, an anesthesiologist and pain management specialist, has been plaintiffs primary treating physician since 6 January 1993. Plaintiff presented to Dr. Duc on referral from Dr. Richard Rauch, a pain specialist, who had previously diagnosed her with reflex sympathetic dystrophy (RSD) of the right wrist and arm. Plaintiff continues to be treated by Dr. Duc for this condition. Plaintiff has been under work restrictions given to her by Dr. Duc since November 1993 as a direct and proximate result of her compensable injury. Plaintiffs work restrictions include no lifting of greater than five to ten pounds, no prolonged or repetitive use of the right hand and, as fine motor skills are painful with plaintiffs right hand, the avoidance of writing and typing. Dr. Duc was of the opinion that plaintiffs reflex sympathetic dystrophy was the result of her compensable 21 August 1990 injury and that plaintiffs winged scapula might also be a result of that injury. However, he was of the opinion that plaintiffs winged scapula could have been as an indirect result of plaintiffs RSD due to disuse or guarding of the right side. Dr. Duc periodically prescribes plaintiff epidural steroid injections which help for varying degrees of time. Dr. Duc was of the opinion that plaintiff retains a 25% permanent partial impairment of the right upper extremity due to her RSD and winged scapula. Dr. Duc was further of the opinion that plaintiff could have trouble typing, writing and with extended filing.
10. Throughout plaintiffs treatment with Dr. Duc she did not, at any point, show any indication that she was exaggerating her symptoms.
11. On 18 August 1997, plaintiff presented to Dr. T. Kern Carlton, a physical medicine and rehabilitation physician board-certified in pain medicine, for an independent medical examination requested by the insurance company. Dr. Carlton concurred with plaintiffs diagnosis of RSD of the right upper extremity. Dr. Carlton was of the opinion that plaintiffs RSD and winged scapula were caused by her 21 August 1990 compensable injury. Dr. Carlton was of the opinion that plaintiff should not engage in any repetitive activity of the right upper extremity and assigned plaintiff a 25% permanent partial impairment of the right upper extremity. Dr. Carlton did give the opinion that plaintiff was able to do her administrative job and rendered that opinion on the assumption that plaintiff had done so for a long period of time and suffered no major or significant change in her condition. However, Dr. Carlton was not informed of plaintiffs inability to adequately perform the administrative job, the disciplinary warnings and reprimands which she received for her failure to adequately perform the job or the pain and symptoms which plaintiff experienced on a regular basis while performing the job. Consequently, Dr. Carltons opinion on plaintiffs ability to do her administrative job is given no weight.
12. Plaintiff was seen by Dr. Felix Freshwater for a third opinion. Dr. Freshwater diagnosed plaintiff as suffering from reflex sympathetic dystrophy caused by her compensable injury. Dr. Freshwater did not express an opinion on the causation of plaintiffs winged scapula. He was further of the opinion that she was in the chronic stages of reflex sympathetic dystrophy and that the worse thing that could happen to her was for her to be placed in a work environment which would "fan the flames and aggravate her condition.
13. Plaintiff was sent to Dr. Stephen J. Naso who conducted two evaluations of plaintiff on 16 July 1996 and 21 April 1997 at the request of defendant-employer and defendant-insurer. Dr. Naso concluded that plaintiff did not suffer from reflex sympathetic dystrophy. Dr. Naso rated plaintiff with a 10% permanent partial impairment of the right upper extremity. He did not conduct physical exams on plaintiff on the two dates on which he made evaluations and is the only doctor who did not diagnose plaintiff with reflex sympathetic dystrophy.
14. Although Dr. Naso is the only doctor who did not diagnose plaintiff as having reflex sympathetic dystrophy, defendant-employer based all of plaintiffs job duties, assignments and requirements on Dr. Nasos evaluation and, according to the testimony of plaintiffs supervisor, Glenn Stryker, refused to consider any other doctors evaluations or opinions, or plaintiffs symptoms which they directly observed.
15. Because Dr. Duc has been plaintiffs primary treating physician and is most familiar with her case, and because the majority of physicians who have examined plaintiff agree with Dr. Ducs diagnosis and permanent partial disability rating, the opinions of Dr. Duc regarding plaintiffs condition, rating, and ability to perform the administrative job with defendant-employer are accorded greater weight than contrary opinions of other physicians who have provided plaintiff with treatment.
16. During the time plaintiff was performing her administrative position duties, she attended medical appointments including rehabilitation appointments and was required to take sick leave and vacation time for these appointments.
17. Defendants had plaintiff investigated by a private investigator who conducted investigations on 27 May 1996, 1 June 1996, 4 June 1996, 6 June 1996 and 10 June 1996. Plaintiff was observed on 27 May 1996 from 7:20 a.m. to 2:15 p.m. During that time only four minutes and four seconds of videotape were made. On 1 June 1996 plaintiff was observed from 6:30 a.m. to 3:00 p.m. and on 4 June 1996 plaintiff was observed from 1:00 p.m. to 6:30 p.m. During both days plaintiff was videotaped for a total of only six minutes and one second. On 6 June 1996 plaintiff was observed from 7:20 a.m. to 4:26 p.m. and on 10 June 1996 plaintiff was observed from 1:30 p.m. to 7:00 p.m. On those two dates plaintiff was videotaped for a total of only one hour, fourteen minutes and one second. Plaintiff was also observed on 16 May 1996 from 2:00 p.m. to 6:30 p.m. and on 17 May 1996 from 7:30 a.m. to 10:00 a.m. No videotape was taken of plaintiff on these dates. Plaintiff had undergone an epidural injection shortly before 27 May 1996 and was experiencing some relief from her symptoms at that time. The videotape considering when it was taken and over what period of time is not inconsistent with plaintiffs testimony regarding her condition, her ability to engage in activities, the length of time which she is able to engage in activities and the relief which is given by occasional epidural injections.
18. Plaintiff was given a 25% permanent partial impairment of the right arm by her treating physician on 17 September 1997. Plaintiff reached maximum medical improvement at that time. However, plaintiff has not reached maximum vocational improvement as yet, which directly affects her ongoing disability.
19. There is a substantial risk that plaintiff will need continuing medical treatment, including but not limited to, future steroid injections, medications, physical exams and physical therapy.
20. Plaintiffs refusal to perform her employment in the administrative position with defendant-employer was justified as the position was not suitable for her. The position was not within her physical capabilities or her capabilities according to the medical opinions of any doctor other than Dr. Naso, and as such was not indicative of plaintiffs earning capacity. Plaintiffs physical inability to perform the job is the direct and proximate result of her compensable 21 August 1990 injury.
21. On 21 August 1990, plaintiff sustained an admittedly compensable injury by accident arising out of and in the course of her employment with defendant-employer resulting in injury and pain in the right upper extremity.
22. As a direct and proximate result of her 21 August 1990 compensable injury by accident, plaintiff sustained reflex sympathetic dystrophy of the right extremity and winged scapula.
23. As a direct and proximate result of her 21 August 1990 compensable injury by accident, plaintiff was unable to engage in physical activities required by her former job or any other job from 24 October 1997 and continuing.
24. Plaintiff has not reached maximum vocational improvement.
25. As a direct and proximate result of her 21 August 1990 compensable injury, plaintiff retains a permanent partial disability of 25% to the upper right extremity.
26. Pending the outcome of vocational rehabilitation, plaintiff is unable to return to her former job or to the administrative position made available to her by defendant-employer and remains totally disabled.
27. Plaintiff is entitled to future medical treatment for her compensable 21 August 1990 injury.
***********
Based upon the foregoing stipulations and findings of fact, the Full Commission enters the following additional:
 CONCLUSIONS OF LAW
1. On 21 August 1990, plaintiff sustained an admittedly compensable injury by accident arising out of and in the course of her employment with defendant-employer. N.C. Gen. Stat. 97-2(6).
2. As a direct and proximate result of her 21 August 1990 compensable injury, plaintiff sustained reflex sympathetic dystrophy of the right upper extremity and winged scapula.
3. As a direct and proximate result of her 21 August 1990 compensable injury, from 24 October 1997 and continuing, plaintiff was and continues to be incapable of earning wages which she was receiving at the time of her injury at the same or in any other employment. N.C. Gen. Stat. 97-29.
4. Plaintiffs refusal to perform the administrative position with defendant-employer was justified as the position was not within her physical capabilities due to her 21 August 1990 compensable injury. N.C. Gen. Stat. 97-32.
5. Plaintiff has reached maximum medical improvement but has not yet reached maximum vocational improvement.
6. Plaintiff earned an average weekly wage of $428.34 yielding a compensation rate of $285.57.
7. As a direct and proximate result of her 21 August 1990 compensable injury, plaintiff is entitled to payment of total compensation at the rate of $285.57 from 24 October 1997 and continuing. N.C. Gen. Stat. 97-29.
8. Plaintiff is entitled to all medical treatment received for her compensable injury including that received for her winged scapula condition. N.C. Gen. Stat. 97-25.
9. In the future, plaintiff bears a substantial risk of requiring future medical treatment, and plaintiff is entitled to have this treatment provided by defendant-employer. N.C. Gen. Stat. 97-25.1.
***********
Based upon the foregoing stipulations, findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Defendant-employer shall pay total disability compensation to plaintiff at the rate of $285.57 per week for the period beginning 24 October 1997 and continuing until further Order of the Commission. Portions of this compensation are due and shall be paid in a lump sum, thereafter such amounts shall be paid in a weekly payment. All such compensation shall be subject to a reasonable attorneys fee approved in Paragraph 2.
2. A reasonable attorneys fee of 25% of the compensation due under Paragraph 1 of this Award is approved for plaintiffs counsel and shall be paid by deducting one fourth of the lump sum currently due plaintiff to be paid directly to plaintiffs counsel. Thereafter, every fourth compensation payment shall be paid directly to plaintiffs counsel.
3. Defendants shall pay all medical expenses incurred by plaintiff as a result of her compensable injury. Defendants shall also pay future related medical expenses.
4. Defendants shall bear the costs; additionally, the following expert witness fee is hereby approved and defendants shall pay the same: a fee of $270.00 for Thomas Alexander Duc, M. D.
This the day of November, 2000.
 S/_____________________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
S/_________________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
S/_________________________ RENE C. RIGGSBEE COMMISSIONER